Thank you, Judge. I'd like to reserve two minutes for a final argument. May it please the Court, my name is Amos Lawrence, and I represent the petitioner in this case, June Li, who is to appeal the BIA's denial of his application for court. If you could move over, just so you're speaking directly under the microphone, because it's being recorded. Thank you very much. I represent the petitioner, June Li, who is appealing the BIA's denial of his application for political asylum. One of the central issues in this case is whether Mr. Li satisfied his burden of establishing that he offered requisite resistance to Chinese coercive population measures. And while Mr. Li's position is he did satisfy this burden, notwithstanding the BIA's reasons for doubting his credibility, it bears emphasis that Mr. Li's asylum claim raised additional grounds for relief that was separately analyzed by the BIA, and which constitutes an independent basis for political asylum. Namely, his claimed fears of the Public Security Bureau, on account of his criticism of the Chinese government in private conversation with his coworkers. And although BIA held that this aspect of Mr. Li's claim also lacked credibility, in contrast to its analysis of his family planning claim, its stated reasons in support of this finding are more clearly erroneous. For example, the BIA's apparent reasoning that this aspect of Mr. Li's claim is undermined by his period of safe residence in China, following his wife's forced sterilization, fails to acknowledge that the motivation of the Public Security Bureau was to apprehend him, excuse me, was not necessarily known during this interval of time. Namely, the negative things he had said against both the government and the National Party in private conversations with his three coworkers. Let me go back to the question of the amount of resistance that he claims to have given in the hospital. Certainly, Judge. Because what we're really dealing with here is an adverse credibility finding, and the question in front of us is the adverse credibility finding sufficiently supported. Of course. Both the IJ and the BIA concluded that this was a late embellishment. That is to say, there'd been no mention of it in any of the written documents. There'd been no mention of it in direct examination. The first time he ever says anything about it, puts anything at all on the record, is on cross-examination. That in itself strikes me as a sufficient ground for the BIA to conclude that that was not credible. How do you respond to that? Well, I respond to that in this way. It's that the first time he expressed resistance to his wife's forced abortion was on cross-examination. And our position is that he confused the resistance he offered and testified to about a direct examination concerning his wife's forced sterilization procedure and the previous abortion that his wife was forced to have. But he doesn't say, I physically resisted until cross-examination. And given the law that we now have with respect to forced sterilization of the wife, giving to the husband a right to asylum requires that the husband do more than just not be happy with what happened to his wife. The husband has to do something that's physical resistance. Of course. And that's the only thing that really is going to get him there if we're talking about the forced abortion. And that doesn't show up until the very, very end. Well, my recollection of the record is that he did testify in direct testimony regarding resistance provided to the forced sterilization, the forced abortion. Resistance, you mean objecting to it? Objecting to it. Right. And my question is, as you correctly did, separate the two claims. With respect to one of the claims, he has to show resistance. Exactly. With respect to a pure asylum claim, he can claim that I face future persecution because I objected to the authorities. But with respect, do his just objections constitute sufficient resistance to satisfy the forced sterilization or abortion claim? Well, the evidence does show that he tried to enter the room in which his wife was being forced to have this forced sterilization. The purpose of requiring some form of resistance is to show that the husband of a woman who has been subjected to these kind of procedures wasn't acquiescing to them and wasn't agreeing with them. No, but I'm sorry. Maybe you didn't ask my question. Okay, sure. Sufficient precision. Is the mere fact that he objected to the authorities doing these things evidence of resistance? In other words, you get a notification from the authorities that your wife will be subjected to one of these procedures and you write back and say, I object. You shouldn't do that. Or afterwards, you write them and say, I'm terribly distressed about what happened. Are either of those evidence of resistance? I would say one is and one is not. There's obviously one doesn't need to have a violent or physical altercation to demonstrate resistance, because the purpose of this rule is to show that you weren't acquiescing to the procedure, that you weren't vying with it. Well, but it uses the word resistance. And so I'm trying to figure out what kind. Surely, if he'd had a physical confrontation. Yes. But they didn't believe that. The I.J. didn't believe that he had. And so I'm now moving to what other forms of resistance here there might be that the I.J. didn't find not credible. Well, my position would be generally on a different fact pattern. That is, if you voiced your verbal opposition to having these procedures, that would constitute resistance, since the whole purpose of this is to show. Focus on this case. What other forms of resistance are there other than the alleged physical altercation? I would say that that part of his claim hinges on the conclusion that the BIA is finding that he didn't offer a resistance in the form of a physical altercation was erroneous, and that it failed to appreciate that his testimony on that was confused rather than manufactured. Now, even if there was sufficient resistance evidenced to me as believable before the physical altercation, the question is credibility rather than sufficiency. When stories get better, there's always a basis for the I.J. or the BIA to be suspicious when the story gets better. That's correct. This story did get better. And whether it shows up in the direct examination or the cross-examination, getting better or the problem that we see when they get better really goes back to, okay, he's had a number of communications with the authorities before he actually testifies, and this is the first we hear of this. So, again, my question is, why is the I.J. and then why is the BIA unjustified in concluding that he's not credible when the story has gotten so dramatically better? Well, in part, if one reviews the record, the direct examination was unusually short. I think he offered one page of testimony for that. So it was inevitable that his cross-examination testimony was going to be. . . But my point here is not that it just shows up at a cross-examination. My point is broader now, and that is it shows up for the first time in the oral testimony. I mean, there had been nothing before then. Well, that's correct, Judge. But prior to the court's decision in Jiang, there wasn't a requirement of this resistance, and I don't think it would be intuitive for an asylum applicant to assume that it was necessarily important to elaborate on that aspect of his claim in his actual asylum application. It would only be under the advice of counsel that he would know was incumbent on him to satisfy that element of the claim, whereas before, there was an automatic entitlement to asylum based on that. Now, you've got about 50 seconds. It looks like I've run out of time, so thank you, Your Honors. We will make sure you get a chance to respond. Thank you. Thank you. Good morning. My name is Paul Stone. I represent the Respondent Attorney General of the United States. The primary issue in this case is the adverse credibility finding, and I'd like to suggest a way it can be decided in a simple, straightforward manner. The petitioner acknowledged his testimony between his initial claim that he found out about the first abortion after it happened and his later claim that he found out during it went and had a physical and verbal altercation with the family planning cadres. It's plainly inconsistent. In addition to that, it also, under the Pre-Real ID Act ideas, it goes to the heart of his claim, meaning that other resistance is a vital aspect of any claim of fear of persecution based on involuntary family planning. So because it goes to the heart of the claim, that inconsistency by itself can support the Board of Immigration Judges' decision. I think you're right on that point, but I guess what bothers me about the BIA's decision, or maybe it's more the IJ's conduct of the hearing, is that our cases are pretty clear that if you're going to rely on an inconsistency of the sort you've described, you are supposed to give the petitioner an opportunity to explain the inconsistency, and that didn't occur here. So how do we — how would we get around that aspect of our case law if we were to deny the petition here? Well, I think he was given an opportunity, Your Honor, but — Was he confronted with it? What Wren v. Holder says is if you're going to rely on, you know, his failure to provide certain information, you ought to say, well, wait a minute, didn't you say this and now that? It's one thing for the IJ to say, I don't believe the confrontation because you never said anything about it before. But it's another thing to say this is inconsistent with something else. And in that circumstance, as Judge Watford says, I know you offer it as another way to affirm, but it seems to me if we were going to rely on that, we'd have to give him the opportunity to explain it, wouldn't we? Well, he was asked twice. First, he was asked why he didn't mention it in his asylum statement. That's the confrontation. Right. No, you were suggesting there was an alternative way for us to uphold the BIA's holding, which is to say that at one point he said, I didn't know about the abortion until after it happened, and at another point he said, I had a confrontation after it happened. Right, and that inconsistency. Right. But was he ever confronted with that inconsistency? Not with the absence from his other papers of the altercation, but with the inconsistency. He was then asked again why he didn't mention the physical confrontation in his direct example. That's not mentioning the confrontation. I'm asking whether or not anybody ever said to him, wait a minute, you once said you didn't learn about the abortion until after it happened. Now you're saying you were there and you had a confrontation. I don't find that in the record in this case. Did that ever happen? He wasn't asked that in that specific way, Your Honor. Okay. He was asked twice why he didn't include it before. Right, and that's the absence of the altercation from any of his prior statements. That's correct, Your Honor. And as Judge Fletcher suggests, that might be enough to uphold the adverse credibility finding. But if we were going to do it on the alternate ground that you suggest, wouldn't we have to first give him the opportunity to be confronted with the inconsistency and try to explain it? He was confronted with the absence. Right. But he was never confronted with the inconsistency. The absence is a perfectly legitimate ground. No, I don't think so because the BIA didn't rely on that ground. They relied on the fact that he mixed up, as he's now saying, he mixed up the two incidents and that was an inconsistency. That was the principal ground the BIA gave. It never gave the ground that you're trying to advocate now. So I just want to come back to the first question I posed. Are you going to point us to some particular page of the hearing transcript where he was told, wait a minute, sir, you described that incident this way and now you're saying what's the explanation? Is there some place where that happened? Just the two places I mentioned, Your Honor. Well, neither of those had anything to do with being confronted with the inconsistency. They had something to do with not having mentioned it earlier. I grant you that. But that's not the ground on which the BIA relied to uphold the IJ's decision. So I don't think under Chenery we can go on that ground. So I guess do you have some other explanation for how we would ignore our case law on this point? In addition to that, Your Honor, there are other inconsistencies. He testified about various complaints he made or intended to make and didn't make or did. At first he testified that he had complained to his work. He had complained to the government. He had complained to the higher level family planning authorities. Later he narrated just saying he complained at work. And later he said he wrote it in the diary. Those are also examples of other resistance. And so those, too, go to the heart of his claim. So those are significant inconsistencies as well. And those are also. What's the inconsistency you see? Because all I saw was very confused testimony that was hard to make heads or tails of. So what's the he said this and now he's saying that. Give us the starkest example of that. Well, for example, he initially said that he complained to his work unit, the family planning unit office, the Tianjin family planning office, the higher authority. And then later he said he actually didn't file a complaint. He just wrote it in his diary. So that would be between, for example, pages 123. I'm sorry, 119 in the transcript and 139 and 140. So he went from, you know, saying he had made all these complaints to saying, well, okay, I just complained at work and then I just wrote it down in my diary, which was incidentally the first time you mentioned that at the end of the hearing. Oh, I know. I know. But so was he given an opportunity to try to explain that inconsistency at the hearing? I don't remember him being confronted with that either. I believe he was, Your Honor. Okay. Where are you looking? Unfortunately, I don't have that sight at my fingertips. Okay. Is it sufficient in this case the IJ found and the BIA in affirming or dismissing  Oh, yeah. Here it is. I'm sorry, Your Honor. I'm sorry. Go ahead. Give Judge Watford. Oh, yes. He was asked if there's any reason he didn't include the What page? Oh, page 140. Got it. Thank you. I wanted to focus on that. Sure. The IJ says one reason I find you not credible is that this incident was not described in your initial application. And as I read the BIA decision, and we only need to have one reason for adverse credibility, correct? Yes, Your Honor. All the reasons It goes to the heart of the claim. Yeah, that goes to the heart of the claim. All the reasons given Under the Real ID Act, all of them can be considered together as well. Right. This is a Real ID Act case? Yes, Your Honor. Okay. So it doesn't have to go to the heart of the claim, does it? No, it doesn't. Okay. But to support it by itself No, okay. So we're Let me go back to my question. The IJ says one reason I don't find you credible is you never mentioned this before. Then the IJ also goes on to say there's some inconsistency between when you say you learned about it. But is the fact that the Is the first thing that I said, the IJ says, I find you not credible because you never mentioned this before. Is that sufficient in and of itself without regard to whether or not he has inconsistencies about when he learned about the abortion? Yes, Your Honor. And now my question is, did the BIA affirm on that ground? Yes, Your Honor. It's because it's a further embellishment of his story because Well, now tell me where the BIA affirmed on that ground. I'm looking at page two of the record. And the BIA says, first, the immigration judge noted that Respondent did not testify under act examination or include in his written statement that he had a physical altercation. And then is that what I'm trying to figure out, whether that's just an affirmance of that alternate ground or whether it's the beginning of a longer explanation? I think it is an affirmance on that ground, Your Honor. It's not the best written decision because it doesn't have the concluding sentence we affirm on this ground, but it goes through Because then the paragraph goes on to talk about the inconsistencies that Judge Watford was asking you about. So I'm trying to figure out how to interpret that paragraph. If it's reliance on merely the omission, I think it's fine. If it's saying it's omission plus, then we get into the issues Judge Watford is talking about. So that's why I'm asking you what you think it says. Yes, Your Honor. I think it does rely on the omission, and I'm sorry I wasn't clear about that earlier. As I said, it's not the best written, but, you know, the first sentence, it describes what the immigration judge held, and later on, and earlier, it said we find a clear error. And I tend to think that may be right because the next paragraph begins by saying the I.J. was not required to accept the Respondent's explanation for the omission. So, you know, this is the source of at least my concern in this. What did the BIA really find? Yes. And you think they found, among other things, that the omission itself supported the adverse credibility? Yes, Your Honor. I think based on that first sentence, they did. And I say I'm out of time. And what do you make of the response from the other side to that very point that, well, the law changed in the interim, and it becomes relevant really only at the time of the testimony. That is to say the requirement of resistance becomes necessary as part of the claim only then. Well, Your Honor, I'm sorry I don't have the transcripts for this, but there was a hearing early on where he got a new attorney who actually said he wanted a continuance to develop the case in light of the new case law. So when the testimony happened and he waited to say these things until later in the hearing, that looks like he was starting to embellish it because his attorney was aware before that, some time before that. Well, yeah, but that doesn't work very well because if the attorney is trying to do it and if your problem is it shows up only in cross-examination, well, if the attorney has any sense at all, he puts it in in direct. No, if the fact that it shows up in cross-examination suggests that he had the story in mind, it's just that the story doesn't come out until cross-examination. That's one way to interpret it, Your Honor. Yeah, okay. But we have to defer to the board's interpretation. Thank you. Thank you. Would you put a minute on the clock, please? I'm sorry? No, I'm talking to... Thank you, Your Honor. I just wanted to make two points. Before an immigration judge can make an adverse credibility finding on the basis of inconsistencies, the applicant is entitled to notification from the judge and an opportunity to explain. This is not satisfied by random inquiry by opposing counsel. Second, the counsel's and the BIA's determination that my client's testimony is inconsistent regarding the complaints he made following his fight for sterilization is based on a significant misinterpretation of his testimony. The BIA found that he said the only time that he expressed a complaint about what happened to his wife was on cross-examination to his coworkers. What he actually said on cross-examination is that the only time he expressed opposition to the government was in his conversation with coworkers. So our position is that his testimony was not, in fact, inconsistent concerning the complaints he made. He made one to his work unit. He made one to the family planning authorities in his neighborhood. And he made these anti-government, anti-party statements to his coworkers, which is the basis for the Public Security Bureau's interest in apprehending him. Thank you. Okay. Thank you very much. Thank both sides for your arguments. The case of Lee v. Whitaker, now Barr, submitted for decision.
judges: W. Fletcher, Watford, Hurwitz